**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

CORDELL D. WILLIAMS, ET AL., )
)
Plaintiffs, )
vs. ) NO. CIV-07-0801-HE
)
UNIVERSAL ENTERPRISES, LLC, )
ET AL., )
)
Defendants. )

**ORDER**

Plaintiffs, Cordell Williams and Gary Dockery, bring this action against their former employer, Universal Enterprises, LLC ("Universal"), and the owner of the company, Mark Butenhoff. Plaintiff Williams asserts claims for hostile work environment, discriminatory discharge, and retaliation in violation of 42 U.S.C. § 1981 and a state law claim for retaliatory discharge in violation of 85 Okla. Stat. § 5. Plaintiff Dockery alleges claims for hostile work environment and retaliation in violation of § 1981 and a state law tort claim for wrongful discharge in violation of Oklahoma public policy. Defendants have filed a motion for summary judgment on plaintiffs' claims.

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence and any reasonable inferences that might be drawn from it are viewed in the light most favorable to the nonmoving party. Davidson v. America Online, Inc., 337 F.3d 1179, 1182 (10th Cir. 2003). Having applied the Rule 56 standard to determine "whether the evidence presents a sufficient disagreement to require submission to

a jury or whether it is so one-sided that one party must prevail as a matter of law," Jeffries v. Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998) (internal quotation and citation omitted), the court concludes the defendants' motion should be granted in part and denied in part.

**BACKGROUND**

Williams, who is African-American, was employed by Universal digging up telephone lines from October of 2006 until May 9, 2007. Dockery, who is Caucasian, was employed as a supervisor with Universal from July of 2006 until May 9, 2007.

According to Williams' testimony, during his employment with Universal, he occasionally heard other employees using racial epithets though they were not specifically directed at him. He also stated that he was told by other employees that the superintendent and a supervisor, who allegedly told Dockery that he was a member of the Aryan Brotherhood, repeatedly made racial slurs about African-Americans and about him specifically. Dockery testified that he heard these racial slurs on numerous occasions and that at least six times he complained to Butenhoff about them.

Williams alleges that, in January or February of 2007, the same supervisor intentionally hit him with a backhoe bucket and then laughed. He states that he told Dockery about the incident and that Dockery reported the incident to Butenhoff. Williams also testified that, some time later, he was injured in an on-the-job accident where he was caught between two cable reels and then fell off a trailer. He claims that the superintendent, who was operating some of the machinery during the accident, told him and Dockery not to say anything about the accident or they would be fired.

According to Dockery, on May 9, 2007, he told Butenhoff that he would come into work between 8:30 and 9:30 in the morning. Dockery testified that, when he arrived at work, he told Butenhoff that he wanted to talk to him about some concerns he had and told him that Williams was hurt on the job. Dockery claims that Butenhoff started yelling, slammed his truck door, and called for Williams. Butenhoff then asked Williams if he had been hurt and Williams confirmed that he had. Butenhoff also allegedly confirmed the injury with the superintendent and then called Williams a "f—ing liar." Dockery claims that Butenhoff then fired him. According to Williams, at some point, he asked Butenhoff if he was also fired and Butenhoff said no. Williams testified that after that Butenhoff looked at him and said, "Well, I don't need none of you all, there's the door." Williams stated that he understood this to mean that he was fired and he left.

Butenhoff claims that Dockery was terminated for showing up to work late while he had the company gas card, thereby disrupting the work of other employees, and that Williams was not fired at all but instead quit.

## DISCUSSION

### I. Hostile Work Environment in violation of § 1981

"To survive summary judgment [as to a hostile work environment claim], a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and "must also produce evidence from which a rational jury could infer that [he] was targeted for harassment

because of [his] gender, race, or national origin." Sandoval v. City of Boulder, 388 F.3d 1312, 1326-7 (10th Cir. 2004) (internal quotation and citation omitted).[1] The harassment must be both subjectively and objectively pervasive or severe. Herrera v. Lufkin Indust., Inc., 474 F.3d 675, 680 (10th Cir. 2007). Whether an environment is hostile is determined "by looking at the totality of circumstances, such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;…whether it unreasonably interferes with an employee's work performance; and the context in which the conduct occurred." Smith v. Northwest Financial Acceptance, Inc., 129 F.3d 1408, 1413 (10th Cir. 1997). Any relevant factor may be considered but no single factor is determinative. *Id.*

**A. Williams' Claim**

Though a close case, the court is skeptical that Williams has presented sufficient evidence to demonstrate a triable issue exists as to the objective element of his hostile work environment claim. While Williams testified he occasionally heard other employees use racial epithets in passing and not directed at him, the majority of the comments he complains of were not made to him or in his presence. Instead, these comments were allegedly made to other employees who told him about them. Though comments made to others and reported to a plaintiff weigh in the hostile work environment determination, they do not suggest the same level of abuse as those made directly to the plaintiff. Further, though Williams claims

[1] *The elements of § 1981 claims are identical to those of claims brought pursuant to Title VII. Thomas v. Denny's, Inc., 111 F.3d 1506, 1513 (10th Cir. 1997).*

the backhoe bucket incident was intentional, there is no indication that he viewed the episode as racially-based at the time nor does he now make that explicit assertion.

In any event, it is ultimately unnecessary for the court to determine whether sufficient evidence has been presented to create a justiciable issue as to the objective element, as the court concludes such evidence has not been presented as to the subjective element. While Williams is correct that an allegedly hostile work environment does not have to inflict psychological injury on the plaintiff to meet the subjective element, Witt v. Roadway Exp., 136 F.3d 1424, 1433 (10th Cir. 1998), a plaintiff must present some evidence that he viewed the environment as abusive. *See* Jessen v. Babbitt, No. 98-8069, 1999 WL 1246915, (10th Cir. Dec. 23, 1999)[2] (holding the plaintiff presented sufficient evidence as to the subjective element where she stated that the alleged harassing behavior upset her on a daily basis, she complained and filed grievances about the behavior, and she sought a transfer to avoid her alleged harasser). Williams has not asserted that he was upset by the environment, that he complained about race-based harassment in it, or that he sought a transfer, nor has he presented other evidence that would indicate that he viewed the environment as racially hostile. Therefore, in the absence of evidence sufficient to create a factual dispute as to whether plaintiff subjectively viewed the environment as racially hostile, the court grants the defendants' motion as to Williams' hostile work environment claim.

**B. Dockery's Claim**

Dockery, who is Caucasian, claims that he was subjected to a hostile work

[2] *Jessen is an unpublished decision cited for persuasive value only under 10th Cir. R. 32.1(A).*

environment when supervisors repeatedly made statements and jokes to him that were derogatory towards African-Americans. He states that these comments "bothered" him enough that he complained to Butenhoff at least six different times. Because Dockery has not alleged that he was targeted for harassment because of *his* race, the court concludes that summary judgment in favor of defendants is appropriate on his hostile work environment claim. *See* Sandoval, 388 F.3d at 1326-7 ("[Plaintiff] must also produce evidence from which a rational jury could infer that [he] was targeted for harassment because of [his] gender, race, or national origin."). While it does not appear that the Tenth Circuit has directly addressed a factual situation like the one present here, the Tenth Circuit's general principle of requiring a plaintiff to show he was subjected to a hostile environment because of his race or other protected characteristic is consistent with the position taken by other circuits that have addressed similar factual circumstances. *See* Bermudez v. TRC Holdings, Inc., 138 F.3d 1176, 1179-81 (7th Cir. 1998) (holding a Caucasian woman could not recover on her hostile work environment claim based on derogatory statements made about African-Americans because she had merely alleged "[a]n adverse reaction to observing someone else's injury...").

The court notes that Dockery's hostile work environment claim is distinguishable from those claims where a plaintiff, though not a member of a protected class himself, is discriminated against on the basis of his association with a member of a protected class. *See* Johnson v. University of Cincinnati, 215 F.3d 561, 574 (6th Cir. 2000). Dockery has not asserted that he was subjected to a hostile work environment because of his association with

Williams or other African-Americans. He simply states that the derogatory statements were made to him and they offended him. Dockery's claim is akin to the plaintiff's claim in Bermudez and, therefore, summary judgment is granted in the defendants' favor on this claim.

## II. Discriminatory Discharge

The McDonnell Douglas[3] analytical framework guides the court's review of Williams' race discrimination claim. Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1181 (10th Cir. 2006).[4] Plaintiff must first establish a prima facie case of prohibited employment action. Green v. New Mexico, 420 F.3d 1189, 1192 (10th Cir. 2005). If he makes a prima facie showing, the burden shifts to defendant to state a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* "If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id.* (internal quotations omitted). Here, a prima facie case of discriminatory discharge requires a showing that (1) plaintiff belongs to a protected class; (2) was qualified for his job; and (3) despite his qualifications, was discharged. *Id.* at 1192, n. 3. Pretext can be shown by "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them

---

[3]*McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).*

[4]*Section 1981 claims are also governed by the McDonnell Douglas doctrine. Thomas v. Denny's Inc., 111 F.3d at 1509.*

unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Antonio, 458 F.3d at 1183. When assessing a contention of pretext, the court "look[s] at the facts as they appear to the person making the decision to terminate, not the aggrieved employee." Green, 420 F.3d at 1191, n. 2.

Defendants' only challenge to Williams' discriminatory discharge claim is that he was not discharged from his employment at all.[5] They claim that he voluntarily walked off the job when Dockery was fired. While Williams agrees that Butenhoff initially told him that he was not fired, he also claims that Butenhoff then looked at him and said, "I don't need none of you all, there's the door." Williams testified that he understood this to mean that he was fired so he left. Williams' testimony is sufficient to create a material issue of fact as to whether Williams was in fact discharged or quit. Therefore, defendants' motion is denied as to Williams' discriminatory discharge claim.[6]

**III. Retaliation in violation of § 1981**

The plaintiffs' retaliation claims are also analyzed under the McDonnell Douglas burden-shifting framework discussed above. Antonio, 458 F .3d at 1181.[7] A plaintiff initially must show "(1) that he engaged in protected opposition to discrimination, (2) that

---

[5]*It appears plaintiff can make the remaining prima facie showing – plaintiff is African-American and defendants admitted in their answer that he was qualified to perform his job duties.*

[6]*Although defendants also assert that the "same actor inference" should be applied so that there is "a strong inference that the employer's stated reason for acting against the employee is not pretextual," the court does not read defendants' motion to assert a legitimate, nondiscriminatory reason for firing Williams. The motion only argues that he was not actually fired.*

[7]*See, supra, note 4.*

a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Argo v. Blue Cross & Blue Shield of Kansas, Inc., 452 F.3d 1193, 1202 (10th Cir. 2006).[8] An employment action that satisfies the second element of the prima facie case is one that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006).

**A. Williams' Claim**

The court concludes that Williams has not made a prima facie showing as to the first element of a retaliation claim — that he engaged in protected opposition to discrimination. Williams points to one occasion where he made a complaint that he claims satisfies this element. He states that some time in January or February of 2007 he told Dockery about the incident where the supervisor hit him with the backhoe bucket and that Dockery reported the incident to Butenhoff. Although informal complaints made to supervisors can constitute protected activity, *see* Somoza v. University of Denver, 513 F.3d 1206, 1213 (10th Cir. 2008), Williams has not testified that he ever complained that the backhoe incident was based on his race. The absence of any statement to his supervisors indicating that he believed the incident was racially discriminatory precludes Williams' retaliation claim. *See* Anderson v. Academy School Dist. 20, No. 03-1535, 2004 WL 2757938, at *3 (10th Cir. Dec. 3, 2004) ("[A] vague reference to discrimination and harassment without any indication that this

[8]*See, supra, note 1.*

misconduct was motivated by race (or another category protected by Title VII) does not constitute protected activity and will not support a retaliation claim.");[9] Petersen v. Utah Dep't of Corrections, 301 F.3d 1182, 1188 (10th Cir. 2002). Accordingly, defendants' motion is granted as to Williams' retaliation claim brought pursuant to § 1981.

**B. Dockery's Claim**

The court likewise concludes that Dockery has not made out a prima facie case of retaliation. As to the first element of engaging in protected activity, Dockery asserts that he reported the backhoe bucket incident and Williams' on-the-job injury to Butenhoff. However, Dockery has not alleged that he ever indicated that these incidents were based on Williams' race and, therefore, they are not protected activity. *See* Anderson, No. 03-1535, 2004 WL 2757938, at *3; Petersen, 301 F.3d at 1188. Dockery also testified that he complained to Butenhoff on at least six different occasions concerning racial remarks made by others. These complaints are protected activity and therefore satisfy the first element of the retaliation claim.

However, Dockery has not put forth sufficient evidence with respect to the third element of the prima facie case — a causal connection between the protected activity and the materially adverse action. Dockery relies upon the temporal proximity of his complaints to his alleged termination. *See* McGowan v. City of Eufala, 472 F.3d 736, 744 (10th Cir. 1999) ("[T]he required link between the protected activity and subsequent adverse employment

---

[9] *Anderson is an unpublished decision cited for persuasive value only under 10th Cir. R. 32.1(A).*

action can be inferred if the action occurs within a short period of time after the protected activity.”). For most of the six complaints he made to Butenhoff, Dockery could not give the dates or months when they occurred. He did state that he complained once when Williams was new to the job, which would have been around October of 2006. He also testified that one time was around Christmas time, which would have been December of 2006. Dockery was not terminated until May of 2007. The more than four month delay between the latest of these complaints and his termination, without more, is not sufficient to raise an inference as to the required causal connection and, therefore, summary judgment is granted in defendants' favor as to Dockery's § 1981 retaliation claim. *See* Meiners v. University of Kansas, 359 F.3d 1222, 1231 (10th Cir. 2004) (holding period of about two months and one week to a maximum of just under three months between the protected activity and the alleged adverse action was too long to establish causation by temporal proximity); Hysten v. Burlington Northern & Santa Fe Ry. Co., 296 F.3d 1177, 1183-84 (10th Cir. 2002) (holding three-month period between protected activity and allegedly retaliatory act not close enough to establish causal connection without more).

**IV. Retaliatory Discharge in violation of 85 Okla. Stat. § 5**

To make out a prima facie case of retaliatory discharge pursuant to 85 Okla. Stat. § 5, a plaintiff “must show [1] employment, [2] on the job injury, [3] receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted, or caused to be instituted,

proceedings under the Act, and [4] *consequent* termination of employment." Buckner v. General Motors Corp., 760 P.2d 803, 806 (Okla. 1988) (emphasis in original). "After a prima facie case is established, the burden then appropriately shifts to the employer to rebut the inference that its motives were retaliatory by articulating that the discharge was for a legitimate non-retaliatory reason for the discharge." *Id.* If the employer makes this showing, "the employee bears the burden of persuasion that the reason given for termination was pretextual."[10] *Id.* at 807.

For the purposes of this motion, the defendants do not dispute Williams' ability to meet the first two elements of the prima facie case. Instead, they assert that he cannot satisfy the third element because he cannot show that he received treatment for a work-related injury or that he instituted proceedings under the Oklahoma Workers' Compensation Act and that he cannot meet the fourth element because he was not terminated but voluntarily left.

The court agrees that Williams has not shown that he received medical treatment under circumstances which put his employer on notice that the treatment had been rendered for a work-related injury. Williams testified that he did not seek treatment for his injury until after his termination.

Similarly, there is no evidence that Williams "instituted" proceedings under the Workers' Compensation Act. Williams admits he had not done anything about filing a workers' compensation claim and had not even planned to file such a claim before his

---

[10]*The employee can also meet his burden by directly showing that his termination was significantly motivated by retaliation for exercising his statutory rights. Id.*

discharge. He has presented no evidence that, at the time of his alleged discharge, Butenhoff could have reasonably inferred that “a workers’ compensation claim would in all probability ensue...” Buckner, 760 P.2d at 811 (noting that not every on-the-job injury results in a workers’ compensation claim and that “it is presumptuous to conclude that every time an employer provides first aid treatment that a workers’ compensation proceeding has been ‘instituted’”). Further, in determining whether proceedings have been instituted, Oklahoma courts have relied heavily upon an indication that “the worker intended or reasonably could have intended to institute proceedings...” *Id.* Here, Williams has admitted that he had no intention of filing a workers’ compensation claim prior to his dismissal. Accordingly, in the absence of evidence to support the third element recognized by the Buckner court, the defendants’ motion is granted as to Williams’ retaliatory discharge claim brought pursuant to 85 Okla. Stat. § 5.[11]

**V. Wrongful Discharge in violation of Oklahoma Public Policy**

Dockery asserts a claim for wrongful discharge in violation of Oklahoma’s public policy. The public policy tort was first recognized as an exception to the at-will employment doctrine by Oklahoma courts in Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989). “At-will employees do not have a cognizable cause of action for wrongful discharge unless the claim falls within the narrow class of complaints in which the discharge may be characterized as

---

[11]*This result is troubling if, as Williams suggests, he declined to pursue treatment or his options under the Workers’ Compensation Act because a supervisor told him he would be fired for reporting the injury. However, plaintiff has identified no authority suggesting Oklahoma would recognize a retaliation claim under 85 Okla. Stat. § 5 where a plaintiff sought no treatment and did nothing to institute proceedings.*

contrary to a clear mandate of public policy and violates some law articulated in state constitutional, statutory or decisional sources." Darrow v. Integris Health, Inc., 176 P.3d 1204, 1210 (Okla. 2008). Oklahoma courts have warned that application of the public policy tort "should be tightly circumscribed." *Id.* A public policy tort arises "where an employee is discharged for (1) refusing to violate an established and well-defined public policy or (2) performing some act consistent with a clear and compelling public policy." *Id.*

Here, Dockery does not suggest that he refused to violate some established, well-defined public policy. Rather, he appears to suggest that he was discharged for performing an act — reporting a workplace injury to another employee — that is consistent with a clear and compelling public policy. In his extraordinarily spare discussion of this claim, Dockery cites only to Darrow and the Workers' Compensation Act, in general, as support for his argument.

Darrow involved termination for reporting allegedly false information in reports related to home health care, circumstances considerably different from those alleged by plaintiff here. Similarly, to the extent Dockery relies on the Workers' Compensation Act to provide the requisite clear mandate of public policy, he has pointed to no provision of the Act which provides protection for a third party, not subject to an on-the-job injury, who has not participated in workers' compensation proceedings. While § 5 does provide a cause of action to an employee who is discharged for testifying or planning to testify in a workers' compensation proceeding, Dockery does not claim that he was terminated because of his testimony or participation in a workers' compensation proceeding. *See* Taylor v. Cache

Creek Nursing Centers, 891 P.2d 607, 610 (Okla. Civ. App. 1994) ("The clear intent of [§ 5] is to prohibit discrimination against employees who either initiated or participated in workers' compensation proceedings.") (internal quotation omitted).

It may be that there is a Burk tort which could potentially be identified in circumstances such as those present here. However, Dockery's very abbreviated discussion of the issue does not identify a sufficient basis for it and, in light of the guidance that the parameters of Burk torts be "tightly circumscribed," the court cannot simply assume the tort's existence. Because Dockery has not identified any clear mandate of public policy that his termination violates, summary judgment in defendants' favor is appropriate as to his wrongful discharge claim.

**CONCLUSION**

Accordingly, defendants' motion for summary judgment [Doc. # 23] is **GRANTED** as to Williams' § 1981 hostile work environment and retaliation claims and his retaliatory discharge claim brought pursuant to 85 Okla. Stat. § 5, and as to all of Dockery's claims. The motion is **DENIED** as to Williams' § 1981 claim for discriminatory discharge.

**IT IS SO ORDERED**.

Dated this 9th day of June, 2008.

JOE HEATON
UNITED STATES DISTRICT JUDGE